IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SILVAN WARNICK,<br><br>Plaintiff,<br><br>v.<br><br>BRADFORD COOLEY, ROBIN WILKINS, DANIEL HERBOLDSHEIMER, JEFFREY HALL, ETHAN RAMPTON, MARK KNIGHTON, JOHN DOES 1-15,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ADOPTING IN PART AND MODIFYING IN PART MAGISTRATE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTIONS TO DISMISS, AND DISMISSING THE CASE**<br><br>Case No. 2:14-cv-00186-JNP-PMW<br><br>District Court Judge Jill N. Parrish |

Before the Court is United States Magistrate Judge Paul M. Warner's Report and Recommendation, (Docket No. 64), regarding a motion to dismiss filed by Defendants Bradford Cooley, Robin Wilkins, Jeffery Hall, Ethan Rampton, and Mark Knighton (collectively, the "County Defendants"), (Docket No. 54), as well as an earlier motion to dismiss filed by Defendant Daniel Herboldsheimer, (Docket No. 53).

## BACKGROUND

The factual and procedural background of this case is fully articulated in the Magistrate's Report. (Docket No. 64, at 2–4). In essence, Plaintiff alleges that Defendant Herboldsheimer, his subordinate, vindictively and wrongfully filed a complaint with county prosecutors, accusing Plaintiff of falsifying a report filed by Defendant Herboldsheimer as part of his duties as a deputy constable at the Salt Lake County justice court. Plaintiff further alleges that County Defendants and Defendant Herboldsheimer thereafter conspired to prosecute him without probable cause.

The criminal charges that allegedly arose from this conspiracy were eventually dismissed by a state court judge for lack of probable cause.

Plaintiff brings this lawsuit against Defendant Herboldsheimer and County Defendants, asserting claims under 42 U.S.C. §§ 1983, 1985 and various state law causes of action.[1] Defendant Herboldsheimer and County Defendants brought separate motions to dismiss the claims against them as alleged in Plaintiff's amended complaint. (Docket Nos. 53, 54). Oral argument on the motions was held before the Magistrate on May 18, 2016. (Docket No. 63). On July 22, 2016, the Magistrate filed his Report and Recommendation. (Docket No. 64). After review of the parties' submissions and arguments, the Magistrate concluded that certain state law claims were barred by the Utah Governmental Immunity Act and that each of the remaining claims against each of the defendants failed to state a claim upon which relief could be granted. Accordingly, the Magistrate recommended that the motions to dismiss be granted. On August 26, 2016, Plaintiff filed his Objections to the Magistrate's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(c), (Docket No. 68), requesting de novo review of the two motions to dismiss. Soon thereafter, the County Defendants and Defendant Herboldsheimer each filed a response to Plaintiff's Objections, defending the Magistrate's decision in their favor. (Docket Nos. 72, 73). Exercising jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367, the court now reviews de novo the Magistrate's decision under 28 U.S.C. § 636(b)(1). Having considered the previous filings, the Magistrate's decision, Plaintiff's objections, and the Defendants' responses, this court adopts in part and modifies in part the Magistrate's Report and Recommendation as explained below.

---

[1] These causes of action include malicious prosecution, negligence, conspiracy, defamation, negligent and/or intentional infliction of emotional distress, and interference with contractual relations.

## STANDARD OF REVIEW

The court reviews those portions of the Magistrate's Report and Recommendation "to which objection is made" de novo. 28 U.S.C. § 636(b)(1). The standard of review for the underlying motions to dismiss is well-articulated in the Magistrate's Report and Recommendation, (Docket No. 64, at 4), and will be discussed in more detail below.

## ANALYSIS

At the outset, the court notes that a substantial portion of Plaintiff's Objection to the Magistrate's Report and recommendation is simply lifted word-for-word from his memoranda in opposition to the underlying motions to dismiss. (*Compare* Docket Nos. 55, 56 *with* Docket No. 68). Though this practice hews dangerously close to a waiver for lack of specificity, *see United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."), the court will nonetheless consider Plaintiff's objections insofar as they are discernible. The court will first address Plaintiff's claims against Defendant Herboldsheimer, then his claims against County Defendants, and, finally, his request for leave to amend.

### I.  Claims Against Defendant Herboldsheimer

Plaintiff makes several objections to the Magistrate's recommendation of dismissal of all claims against Defendant Herboldsheimer. The court will address these objections as they pertain to a) Plaintiff's claims against Defendant Herboldsheimer under § 1983, b) Plaintiff's claims against Defendant Herboldsheimer under § 1985, and c) Plaintiff's state law claims against Defendant Herboldsheimer.

### a. Claims Against Herboldsheimer under § 1983

Plaintiff first objects to the Magistrate's conclusion that his complaint failed to state a claim under 42 U.S.C. § 1983 against Defendant Herboldsheimer. Specifically, the Magistrate determined that the complaint failed to allege any facts indicating that Defendant Herboldsheimer was "acting under color of law" as required by § 1983. The Magistrate explained that an individual acts "under color of law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031 (1941)). Based on this principle, the Magistrate concluded that Defendant Herboldsheimer was not acting under color of law when he allegedly violated Plaintiff's rights. In response to the Magistrate's report, Plaintiff seems to argue that Defendant Herboldsheimer exercised authority under the color of state law simply because he worked at the South Salt Lake City Justice Court and his report to prosecutors pertained to his duties as a deputy constable. After considering Plaintiff's objections, this court agrees with the Magistrate.

As an initial matter, it is not clear from the face of the complaint that Defendant Herboldsheimer was in fact an employee of either the State of Utah or Salt Lake County. Although it is likely that Defendant Herboldsheimer has some legal link to state or municipal authority in his role as a deputy constable, the complaint states only that Defendant Herboldsheimer was an employee of Plaintiff, (Docket No. 28, at 2), and points to no statutory basis for Defendant Herboldsheimer to exercise authority derived from state law.

But even if Herboldsheimer were properly considered a public employee, "the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995).

4

Instead, "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494. Plaintiff has failed to do so here. Despite Plaintiff's assertions to the contrary, there is no "real nexus" between Defendant Herboldsheimer's filing of a report with prosecutors and any authority derived from state law that he exercised as a deputy constable. The mere fact that Defendant Herboldsheimer worked in a government-run justice court is insufficient to establish that he acted with authority derived from a government entity. *See Jojola*, 55 F.3d at 493. And although the report itself dealt with Defendant Herboldsheimer's duties as a deputy constable, there is absolutely no indication that the filing of the report was an exercise of "power possessed by virtue of state law" or that his report was "made possible only because [he was] clothed with the authority of state law." *West*, 487 U.S. at 49 (internal quotations omitted); *How v. City of Baxter Springs*, 217 F. App'x 787, 793 n.5 (10th Cir. 2007) (holding that a county clerk did not act under color of state law when she filed a criminal defamation complaint against an outspoken citizen because there was no evidence that she "used her position as a city clerk to gain an advantage in the filing of her complaint"). There is certainly no colorable allegation here that reporting his supervisor's alleged malfeasance to county prosecutors was a typical function of Defendant Herboldsheimer's employment. "After all, any citizen can report suspicious activity to the police" and there is no indication in the complaint that Defendant Herboldsheimer was acting as anything other than a citizen by reporting Plaintiff's alleged activity to prosecutors. *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156–57 (10th Cir. 2016) (holding that city parking enforcement officers were not acting "under color of law" when they reported plaintiff's potentially criminal activity to the police while on duty). Thus, the Magistrate properly concluded that Plaintiff has failed to

5

allege any facts that indicate that Defendant Herboldsheimer acted under color of state law as required by § 1983.

Still, Plaintiff insists that his claim against Defendant Herboldsheimer under § 1983 may survive because he has alleged "joint action" under § 1983. (Docket No. 68, at 9–10). The Magistrate determined that Plaintiff "fail[ed] to allege sufficient facts showing an agreement and concerted action between or among [Defendant] Herboldsheimer and any of the County Defendants[,]" (Docket No. 64, at 6), and this court agrees. Plaintiff has alleged that Defendant Herboldsheimer provided information to County Defendants and that they "encourage[ed]" Defendant Herboldsheimer to provide "false information as being accurate," (Docket No. 28, at 7), but these conclusory allegations alone do not support an inference of joint action. The Tenth Circuit has "consistently held that furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law. Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Schaffer*, 814 F.3d at 1157 (citation omitted).

Plaintiff has made no factual allegations that would support an inference that the County Defendants' decision to prosecute him was somehow contingent on Defendant Herboldsheimer's influence. In fact, the complaint clearly alleges that the County Defendants did not decide to prosecute Plaintiff until *after* they had conducted their own independent investigation. (Docket No. 28, at 6–8); *see also Schaffer*, 814 F.3d at 1158 (holding that witnesses who testified against plaintiff did not participate in joint action with police or prosecutors because the decision to arrest the plaintiff was made only after an independent investigation); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995) (contrasting previous Tenth Circuit cases where "the record indicated that [arresting] police officers had made an independent decision to

6

make the challenged arrest," indicating a lack of "joint action" under § 1983, and a case where

the arresting officer "did not make an independent investigation but relied on the judgment" of a

reporting witness, indicating "joint action" under § 1983); *Murray v. Wal-Mart, Inc.*, 874 F.2d

555, 559 (8th Cir. 1989) (finding joint action because, *inter alia*, a prosecutor "made his

recommendation to prosecute based on [a witness'] word, not upon an independent investigation

of the facts"); *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005) ("[R]eliance [by law

enforcement on the allegation of victims] does not imply that the victims are exercising state

power."). Further, the mere allegation that Defendant Herboldsheimer conspired with prosecutors

is not sufficient to create a reasonable inference that he "shared an unconstitutional goal" with

County Defendants. *See Schaffer*, 814 F.3d at 1158; *Tonkovich v. Kansas Bd. of Regents*, 159

F.3d 504, 533 (10th Cir. 1998) (explaining that, in order to survive a motion to dismiss, "a

plaintiff must allege specific facts showing an agreement and concerted action amongst the

defendants" (internal quotations omitted));  *Ercoli v. Paiva*, 2004 WL 539998, at *2 (N.D. Ill.

Jan. 23, 2004) (unpublished) (holding that the "mere fact that [a complaining witness] talked to

police cannot be fairly characterized as part of a 'conspiracy'" even if the witness was lying; his

"cooperation with the police is insufficient to support an inference that he reached an

understanding with them to violate the plaintiff's constitutional rights"); *cf. Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 556–57, 127 S. Ct. 1955 (2007) ("Without more, parallel conduct does

not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does

not supply facts adequate to show illegality."); *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th

Cir. 2004) ("Parallel action . . . does not necessarily indicate an agreement to act in concert."). In

other words, Plaintiff has failed to plead sufficient facts to indicate that Defendant

Herboldsheimer "had any involvement in [his] . . . prosecution beyond furnishing information to

law enforcement officers." *Schaffer*, 814 F.3d at 1158 (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)); *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987) (holding that a private individual did not participate in joint action under § 1983 when he reported an alleged crime to police and insisted on specific charges). Accordingly, the Magistrate properly concluded that Plaintiff has failed to allege facts that would support a reasonable inference of joint action under § 1983.

### b.   Claim against Herboldsheimer under § 1985

Next, Plaintiff objects to the Magistrate's determination that he has failed to state a claim for conspiracy under § 1985. This court agrees with the Magistrate. As discussed above, Plaintiff has failed to allege facts that would support a plausible inference of concerted action between Defendant Herboldsheimer and County Defendants as required by § 1985. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990) (explaining that, in the context of a § 1985 claim, "[a] civil conspiracy requires the combination of two or more persons acting in concert"); *Tonkovich*, 159 F.3d at 533 (requiring evidence of "agreement and concerted action amongst the defendants" in a § 1985 action). Moreover, Plaintiff has failed to allege any facts that would indicate that the alleged conspiracy was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus'" as required for claims under § 1985. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S. Ct. 1790 (1971)). Therefore, the Magistrate properly concluded that Plaintiff has failed to state a claim against Defendant Herboldsheimer under § 1985.

### c.   Claims Against Herboldsheimer under State Law

Finally, Plaintiff does not challenge the Magistrate's conclusion that the numerous state law claims against Defendant Herboldsheimer outlined in his complaint should be dismissed and has

therefore waived any arguments he may have in defense of those claims. *See One Parcel of Real Property*, 73 F.3d at 1060 ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). And, in any event, this court agrees with the Magistrate's conclusion that the state law claims against Defendant Herboldsheimer are nothing more than "mere labels and conclusions, and a formulaic recitation of the elements" of various causes of action, and therefore each fails to state a claim. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Like the others discussed above, these claims against Defendant Herboldsheimer are ripe for dismissal.

## II.      Claims Against County Defendants

Plaintiff also challenges the Magistrate's recommendation that his claims against the County Defendants be dismissed. The court will address these objections as they pertain to a) Plaintiff's claims against County Defendants under § 1983, b) Plaintiff's claims against County Defendants under § 1985, and c) Plaintiff's state law claims against County Defendants.

### a.   Claims Against County Defendants under § 1983

Plaintiff first challenges the Magistrate's conclusions regarding his § 1983 claims against County Defendants. Plaintiff alleges that the County Defendants violated § 1983 when they engaged in an "unwarranted investigation" of the Herboldsheimer complaint and prosecuted him "without probable cause or adequate Due Process." (Docket No. 28, at 12). Given a generous reading, Plaintiff's complaint also alleges that the County Defendants violated § 1983 through some form of defamation. *See id.* at 12–13 (alleging that County Defendants deprived Plaintiff of liberty interests by subjecting him to "public ridicule and loss of business"). The Magistrate

9

determined that Defendants Hall, Cooley, and Rampton's participation in the investigation of the
Herbolsheimer complaint and their decision to prosecute Plaintiff were "intimately associated
with the judicial phase of the criminal process" and therefore protected by absolute immunity
under *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984 (1976). The Magistrate also
concluded that all of the allegations against Defendants Knighton and Wilkins under § 1983 and
any claims relating to defamation against all of the County Defendants were so conclusory and
vague that they failed to give notice to County Defendants of the claims against them. As
explained below, this court agrees with much of the Magistrate's reasoning and with the
Magistrate's ultimate conclusion that Plaintiff's complaint failed to state a claim against County
Defendants under § 1983. Nevertheless, in light of Plaintiff's objection, a portion of the
Magistrate's analysis regarding the applicability of absolute immunity requires modification.

### i.      Absolute Immunity and Claims Against Defendants Hall, Cooley, and Rampton under § 1983

First, this court agrees with the Magistrate's conclusion that Defendants Hall, Cooley, and
Rampton's decision to file charges against Plaintiff—with or without probable cause—was
protected by absolute immunity. The decision to prosecute, including the evaluation of available
evidence for probable cause, is part and parcel of a prosecutor's role as an advocate. *See
Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Prosecutors are
entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-
gathering actions, their evaluation of evidence, their determination of whether probable cause
exists, and their determination of what information to show the court."); *Grant v. Hollenbach*,
870 F.2d 1135, 1138 (6th Cir. 1989) ("The decision to prosecute, . . . even if malicious and
founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*."

10

(internal quotation omitted)). Such actions are absolutely protected so as to allow prosecutors "the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation." *Snell v. Tunnell*, 920 F.2d 673, 686–87 (10th Cir. 1990). Thus, despite Plaintiff's objections,[2] the Magistrate correctly concluded that these prosecutorial decisions were protected by absolute immunity.

However, this court does not agree with the Magistrate's conclusion that the participation by Defendants Hall, Cooley, and Rampton in the investigation of the Herboldsheimer complaint was necessarily protected by absolute immunity. In his complaint, Plaintiff alleges that Defendant Hall, after speaking with Defendant Herboldsheimer regarding Plaintiff's handling of the report, assigned Defendants Wilkins and Knighton to investigate Defendant Herboldsheimer's accusations "with the intent to search for evidence that might give them probable cause to bring

---

[2] Plaintiff insists that a prosecutor may "lose absolute immunity when he or she steps into the investigatory function." (Docket No. 68, at 15). While this is clearly true as a general principle, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993), the principle cannot be applied in the manner Plaintiff suggests. Plaintiff seems to argue that absolute immunity is subject to all-or-nothing application, such that a prosecutor who once steps outside of the prosecutorial function loses absolute immunity for all other conduct related to a case. (*See* Docket No. 68, at 14–15) (arguing that County Defendants' actions "at the very minimum removed absolute immunity to no immunity, or qualified immunity"). Based on this erroneous interpretation of the law, Plaintiff asserts that absolute immunity cannot attach to any of County Defendants' actions because they allegedly spoke to the media and directed an investigation against Plaintiff. *Id.* at 14. But this approach is directly contrary to established law regarding claims of immunity under § 1983, which evaluates "whether *particular actions* of government officials" are entitled to absolute or qualified immunity. *See Buckley*, 509 U.S. at 269 (emphasis added).

Additionally, Plaintiff seems to argue that the Magistrate erred because the burden is on County Defendants to establish absolute immunity as an affirmative defense. *See Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934 (1991) (explaining that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question"). This argument appears to arise from the Magistrate's conclusion that "most of Plaintiff's allegations are vague and conclusory and do not sufficiently allege that Cooley, Rampton, and Hall acted outside the scope of their traditional roles as prosecutors." (Docket No. 64, at 10). While Plaintiff need not specially plead around affirmative defenses like absolute immunity, *see Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (explaining that immunity is an affirmative defense and that the burden of pleading is on defendant, not plaintiff); *Banks v. Geary Cty. Dist. Court*, 645 F. App'x 713, 717 (10th Cir. 2016) (unpublished), "[a] district court may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense . . . when the law compels that result[,]" *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015). Here, the Magistrate concluded that the applicability of prosecutorial immunity to the alleged conduct was evident on the face of the complaint. Because the facts alleged in the complaint plainly implicated prosecutorial immunity, the Magistrate's analytical focus on that affirmative defense was proper. *See id.*

an action against" Plaintiff. (Docket No. 28, at 6). The complaint suggests that Defendants Hall,

Cooley, and Rampton "were actively engaged in [an] investigatory function by directly

participating in the preliminary gathering of evidence that might ripen into a potential

prosecution." *Id.* at 6–7. The Magistrate concluded that these investigative actions "are . . . taken

as part of the prosecutor's role as an officer of the court" and were therefore entitled to absolute

immunity. (Docket No. 64, at 11). This conclusion is erroneous.

While it is true "that absolute immunity may attach even to . . . administrative or

investigative activities 'when these functions are necessary so that a prosecutor may fulfill his

function as an officer of the court[,]'" *see Pfeiffer*, 929 F.2d at 1490, it is not clear from the face

of the complaint that the investigation conducted by Hall, Cooley, and Rampton was necessary to

fulfill that function. "[A] prosecutor is entitled to absolute immunity for those actions that cast

him in the role of an advocate initiating and presenting the government's case." *Mink v. Suthers*,

482 F.3d 1244, 1261 (10th Cir. 2007). In other words, a prosecutorial "advocate" performs

functions that are "closely associated with the judicial process." *Id.* at 1260 (citing *Burns v. Reed*,

500 U.S. 478, 495, 111 S. Ct. 1934 (1991). Thus, "[t]he more distant a function is from the

judicial process, the less likely absolute immunity will attach." *Snell*, 920 F.2d at 687. More

specifically,

> [t]here is a difference between the advocate's role in evaluating evidence and
> interviewing witnesses as he prepares for trial, on the one hand, and the detective's
> role in searching for the clues and corroboration that might give him probable cause
> to recommend that a suspect be arrested, on the other hand.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606 (1993); *Eden v. Voss*, 105 F. App'x

234, 244 (10th Cir. 2004) ("There is a difference between evaluating evidence in order to prepare

for trial and searching for evidence that might give probable cause to bring an action."); *Smith v.*

*Garetto*, 147 F.3d 91, 94 (2d Cir. 1998) ("Although all investigative activity could be considered

in some sense to be 'preparing for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate *of a case already assembled* and those investigative steps taken to gather evidence." (emphasis added)).

Here, Plaintiff has alleged that Hall, Cooley, and Rampton directed the investigation into Plaintiff's conduct in order to gather evidence that might amount to probable cause for prosecution. Though this allegation is somewhat threadbare, the complaint as a whole states enough facts to suggest that Hall, Cooley, and Rampton were searching for "clues and corroboration that might give [them] probable cause" to initiate a prosecution against Plaintiff. *See Buckley*, 509 U.S. at 273. Such searching cannot be construed as "advocacy," and is therefore not entitled to absolute immunity. *See id.* at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."); *Snell*, 920 F.2d at 693 (explaining that "a prosecutor who interrogates a suspect in the first instance" and "an attorney who assists a police officer in investigating a child abuse complaint" are "fulfilling [] investigative, rather than [] prosecutorial, functions"). Accordingly, the court modifies the Magistrate's analysis regarding absolute immunity insofar as it pertains to the County Defendants' investigation of the Herboldsheimer complaint.

Nonetheless, the Magistrate's ultimate conclusion that Plaintiff has failed to state a claim under § 1983 against Defendants Hall, Cooley, and Rampton relating to their investigation of the Herboldsheimer complaint is correct. Even if Defendants Hall, Cooley, and Rampton's participation in the preliminary investigation was not entitled to absolute immunity, Plaintiff has failed to explain how the investigation itself worked a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983.

Beyond conclusory allegations that the County Defendants at some unspecified point and in some unspecified way violated "his rights protected under the First, Fourth, Fifth and Fourteenth Amendments [to] the United States Constitution," (Docket No. 28, at 12), Plaintiff has not alleged any specific unconstitutional or unlawful actions by the prosecutors in their investigation of the Herboldsheimer complaint. Plaintiff does allege that all of the County Defendants somehow "encourage[d]" Defendant Herboldsheimer to present false information, but it is not clear whether this actually occurred during the investigation, in preparation for filing charges, or in some sort of preliminary hearing or other proceeding. More importantly, the idea that the prosecutors "encourage[d]" Defendant Herboldsheimer to falsely accuse Plaintiff is inconsistent with0 the complaint itself, which alleges that Defendant Herboldsheimer approached the prosecutors and vindictively falsified the complaint of his own volition. Thus, whether or not Defendants Hall, Cooley, and Rampton were entitled to prosecutorial immunity for their actions in connection with the investigation of the Herboldsheimer complaint is ultimately irrelevant, because Plaintiff has not made any allegation of a cognizable constitutional deprivation arising from the investigation. Thus, his claim against Defendants Hall, Cooley, and Rampton under § 1983 is still subject to dismissal for failure to state a claim.

### ii.    Remaining Claims Against All County Defendants under § 1983

Next, Plaintiff objects to the Magistrate's conclusion that he has failed to state any constitutional violation that would sustain a § 1983 action against County Defendants. In essence, Plaintiff contends that the Magistrate demands a level of factual specificity that is not required under Fed. R. Civ. P. 8(a), and that his § 1983 claims are supported by sufficient factual allegations to survive a motion to dismiss. This court disagrees. While his complaint need not provide "detailed factual allegations" in order to state a claim, Plaintiff must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Moreover, "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In this context, "plausible" does not mean "'likely to be true.' Rather, 'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, in order to survive a motion to dismiss, a complaint must "provide fair notice of the grounds for the claims made against *each* of the defendants." *Id.* at 1250 (emphasis added). In the context of § 1983 and similar actions, Plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Aschroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). Indeed, claims under § 1983 "against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins*, 519 F.3d at 1249.

Here, Plaintiff's complaint offers little more than "labels and conclusions" and cannot sustain a claim under § 1983. *See Twombly*, 550 U.S. at 555. Instead, Plaintiff states in conclusory fashion that all of the County Defendants violated his constitutional rights and spends several pages outlining the damage done by these alleged deprivations. As the Magistrate noted, none of these claims differentiates between any of the County Defendants, but simply alleges without elaboration that each and every defendant was somehow involved in each and every alleged deprivation. Thus, the claims fail to "make clear exactly who is alleged to have done what to

whom, [and do not] provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins*, 519 F.3d at 1250.

Perhaps more importantly, Plaintiff has failed to allege facts that would suggest how these deprivations occurred. Plaintiff alleges that each County Defendant "malign[ed] [his] character," (Docket No. 28, at 11), but does not allege who said what or even what was said.[3] Plaintiff also seems to allege that Defendants Knighton and Wilkins somehow "caused [him] to be prosecuted" on false charges, (*Id.*), but fails to allege any additional factual support for such a claim beyond the bare assertion that they were assigned to investigate the Herboldsheimer complaint, (Docket No. 28, at 6–7).[4] And, finally, Plaintiff alleges that all of the defendants conspired with one another to prosecute him without probable cause, but fails to allege any facts indicating that any of the defendants shared this unconstitutional goal or that any non-immune County Defendants took any actions in service of that goal.[5] These allegations "are so general that they encompass a wide swath of conduct, much of it innocent," meaning that Plaintiff has "not nudged [his] claims across the line from conceivable to plausible." *See Robbins*, 519 F.3d at 1247 (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 570). Likewise, the complaint, as a whole, fails to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at

---

[3] In the same vein, Plaintiff alleges that County Defendants "depriv[ed] him of his livelihood and freedom, and subject[ed]" him "to public ridicule and loss of business" and impeded his employment opportunities. (*See* Docket No. 28, at 12–13). It is not clear from the face of the complaint what alleged conduct caused these injuries. In his Objections, Plaintiff seems to connect these injuries to the defamation alleged later in his complaint, (*see id.* at 15–16), but those allegations similarly fail to "make clear exactly who is alleged to have done what to whom" as required for § 1983 claims, *see Robbins*, 519 F.3d at 1250.

[4] Plaintiff also alleges that Defendants Hall, Cooley, and Rampton prosecuted him without probable cause, but as discussed previously, they are absolutely immune from such a claim.

[5] Plaintiff does allege that all of the County Defendants "encourage[d]" Defendant Herboldsheimer to "provide[] . . . false information as being accurate regarding . . . the facts surrounding the August 24, 2011 incident." (Docket No. 28, at 7). This statement is unsupported by any other factual allegations and, as explained above, is contradicted by Plaintiff's allegation that Defendant Herboldsheimer approached prosecutors of his own volition.

555. In sum, the court agrees with the Magistrate's ultimate conclusion that Plaintiff has failed to state a claim under § 1983 against the County Defendants.

### b. Claims Against County Defendants under § 1985

Plaintiff next objects to the Magistrate's conclusion that he has failed to state a claim against the County Defendants under § 1985. Again, this court agrees with the Magistrate. As explained above, even accepting Plaintiff's generalized allegations of conspiracy as true, Plaintiff has plainly failed to allege or even suggest that the conspiracy was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus'" as required for claims under § 1985. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S. Ct. 1790 (1971)). His claims under § 1985 were therefore properly recommended for dismissal by the Magistrate.

### c. Claims Against County Defendants under State Law

Finally, Plaintiff makes several objections to the Magistrate's conclusion that his complaint fails to state a single viable claim under state law. He objects first to the Magistrate's conclusion regarding his compliance with the Utah Governmental Immunity Act. Next, he objects to the Magistrate's conclusion that the remaining state law claims are not supported by adequate factual allegations to survive a motion to dismiss. These objections are addressed in turn.

### i. State Law Claims Barred by the Utah Governmental Immunity Act

Plaintiff first challenges the Magistrate's conclusion that his failure to comply with the notice provisions of the Utah Governmental Immunity Act ("Immunity Act") bars his state law claims against Defendants Hall and Knighton. *See* Utah Code § 63G-7-401(2) ("Any person having a claim against a governmental entity, or against its employee . . . shall file a written

17

notice of claim with the entity before maintaining the action . . . ."). Plaintiff concedes that he did not expressly name Defendants Hall or Knighton in his Notice of Claim, but argues that he included "John or Jane Does" as potential parties, and that should suffice for notice under the Immunity Act. (Docket No. 68, at 16). This court disagrees.

The Immunity Act explicitly requires that notice of a claim "being pursued against a governmental employee" include "the *name* of the employee." *See* § 63G-7-401(3)(a)(iv) (emphasis added). Here, Plaintiff failed to include the names of either Defendant Hall or Defendant Knighton in his submitted Notice of Claim, meaning he has failed to strictly comply with the requirements of the Immunity Act. *See Sethunya v. Weber State Univ.*, 2009 WL 3460303 at *3–*4 (D. Utah Oct. 21, 2009) (unpublished) (holding that failure to expressly name individual employees in Notice of Claim barred claims against those employees under the Immunity Act). The Supreme Court of Utah has consistently required dismissal of claims "when they fail to follow the unambiguous language of the Immunity Act." *Li v. Univ. of Utah*, 144 P.3d 1142, 1146 (Utah 2006). This is because "the Immunity Act demands strict compliance with its requirements to allow suit against governmental entities. The notice of claim provision, particularly, neither contemplates nor allows for anything less." *Wheeler v. McPherson*, 40 P.3d 632, 636 (Utah 2002). Plaintiff failed to comply with the strictures of the Immunity Act and therefore the Magistrate properly concluded that his claims against Defendants Knighton and Hall under state law are barred. As a result, the claims must be dismissed for lack of jurisdiction.[6] *See Greene v. Utah Transit Authority*, 37 P.3d 1156, 1159 (Utah 2001)

---

[6] The Magistrate also properly concluded that Plaintiff's claims against all County Defendants for defamation and negligent infliction of emotional distress, which were not expressly identified or alluded to in the Notice of Claim as required by the Immunity Act, are barred. Plaintiff did not object to this conclusion, so the court need not address it further.

("Compliance with the Immunity Act is necessary to confer subject matter jurisdiction upon a trial court to hear claims against governmental entities.").

### ii.    Remaining State Law Claims

Next, Plaintiff challenges the Magistrate's conclusion that each of his remaining state law claims fail to state a claim for relief and should be dismissed. Plaintiff again contends that the Magistrate demands a level of factual specificity at odds with the *Twombly/Iqbal* pleading standard. This court again disagrees. Plaintiff has provided a generalized factual scenario at the beginning of his complaint and a conclusory list of the elements under each cause of action without any substantive elaboration. Some of the claims do not even fully articulate the elements of the stated cause of action. (*See, e.g.*, Docket No. 28, at 14) (alleging that "[t]he acts and/or omissions of defendants, and each of them, constitute an action of malicious prosecution" without further elaboration). These pleadings fail to state a claim because they do not "inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). Instead, this approach to pleading leaves the County Defendants (and this court) to piece together what acts, if any, may fulfill the requirements of each claim. A pleading in compliance with Rule 8(a) must not only provide "a short and plain statement of the claim"—it must also "*show*[] that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (emphasis added). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Glenn v. First Nat'l Bank*, 868 F.2d 368, 372 (10th Cir. 1989) (affirming dismissal of complaint where trial court refused to "do [plaintiffs'] work for them to connect assertions with elements of" their claim). Thus, the Magistrate properly concluded that each cause of action alleged by Plaintiff under state law fails to state a claim.

### III.    Leave to Amend

In concluding his Objections, Plaintiff requests leave to amend should the court uphold the Magistrate's Report and Recommendation and dismiss his complaint. Leave to amend is to be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the purpose of Rule 15(a) is "to provide litigants the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). However, the decision to allow or deny leave to amend is ultimately left to the discretion of the trial court. *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795 (1971)). And a trial court may deny leave to amend upon "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005). Relevant here, a trial court may also deny leave to amend where a plaintiff fails to file a written motion and instead "merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010).

Applying the above principles, the court must deny Plaintiff's request for leave to amend. First, Plaintiff has failed to file a proper motion with the court for leave to amend—his request arises only as an "in-the-alternative" afterthought to his Objections to the Magistrate's Report. "This is insufficient." *See Garman*, 630 F.3d at 986 (affirming denial of a nearly identical request couched in a response to a motion to dismiss). Perhaps more importantly, Plaintiff's request does

not suggest appropriate grounds for amendment and he has failed to proffer a proposed amended complaint in violation of local rules.[7] *See* DUCivR 15-1 ("Parties moving under FRCP 15-1 to amend a complaint must attach the proposed amended complaint as an exhibit to the motion for leave to file."). Failure to proffer a proposed amended complaint leaves the court and Defendants with little insight into Plaintiff's ability to cure the deficiencies identified in the Magistrate's Report. Thus, Plaintiff's request fails to "give adequate notice to the district court and to the opposing party of the basis of the proposed amendment" and, as a result, the court is not "required to recognize that a motion for leave to amend is before it." *Calderon v. Kan. Dep't of Soc. & Rehabilitation Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999); *see also Glenn*, 868 F.2d at 370–71 (such a request "does not rise to the status of a [Rule 15(a)] motion," and is properly ignored or rejected by the trial court); *Garman*, 630 F.3d at 986 (district court did not err in denying request for leave to amend where no proper Rule 15(a) motion was filed); *Muathe v. Fifth Third Bank*, 627 F. App'x 732, 734 (10th Cir. 2015) (unpublished) (same). Courts are "not require[d] . . . to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." *Calderon*, 181 F.3d at 1187.

---

[7] The court notes that Plaintiff's Objections do suggest some new factual allegations, but even if the court were to entertain his request for leave and read these new allegations as a putative amended complaint, that complaint would still be subject to dismissal. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."). For example, Plaintiff's proffer of additional factual allegations regarding Defendant Herboldsheimer's duties as a deputy constable still does not suggest he was "acting under color of state law" when he accused Plaintiff of falsifying his report, *see* 42 U.S.C. § 1983, it merely reaffirms that his complaint to prosecutors involved discussion of his duties as a deputy constable. Similarly, the newspaper article quoting Defendant Hall (which the court assumes is meant to bolster Plaintiff's claims of defamation) does not appear to be defamatory on its face, and certainly does not rise to the level of a constitutional violation under § 1983. Thus amendment to include the article would be futile. *See Jefferson Cnty. Sch. Dist.*, 175 F.3d at 859. Furthermore, the article has been publicly available since its publication in 2011, yet Plaintiff has failed to incorporate it into his pleadings until now, militating against leave to include it in a new complaint. *See Frank*, 3 F.3d at 1366 ("Further, '[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.'" (alterations in original) (quoting *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).

Finally, Plaintiff's failure to submit a proposed amended complaint, coupled with the lateness of the request (nearly three years after the first amended complaint was filed), suggests that Plaintiff cannot in fact cure the complaint.[8] Accordingly, the court will dismiss Plaintiff's claims with prejudice for failure to state a claim, *see Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."), except those barred by the Utah Governmental Immunity Act, which must be dismissed without prejudice for lack of jurisdiction, *see id.* at 1218 ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." (emphasis in original)); *Greene v. Utah Transit Authority*, 37 P.3d at 1159 (explaining that compliance with strictures of the Immunity Act is necessary to confer subject matter jurisdiction over state law claims against covered employees or entities).

## CONCLUSION

Based on the foregoing, the court ORDERS as follows:

1. The Magistrate's Report and Recommendation (Docket No. 64) is ADOPTED IN PART and MODIFIED IN PART, as explained above.

2. Defendant Herboldsheimer's Motion to Dismiss (Docket No. 53) is GRANTED.

---

[8] The court notes that Plaintiff has also failed to cure clearly identified deficiencies with a previous amendment. Plaintiff's first amended complaint was filed in direct response to Defendants' previous motions to dismiss, which pinpointed deficiencies in Plaintiff's original complaint that are nearly identical to those discussed here. *Compare* (Docket Nos. 21, 22) *with* (Docket Nos. 53, 54). Rather than repeat the cycle of insufficient amendment followed by more duplicative motions to dismiss, the court will deny Plaintiff's request for leave to amend and dismiss the bulk of his claims with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."); *United States v. St. Mark's Hospital*, 2017 WL 237615 at *11 (D. Utah Jan. 19, 2017) (unpublished) (denying leave to amend, in part, because plaintiff had previously amended complaint in response to motions to dismiss that identified the same deficiencies that now subjected the amended complaint to dismissal).

3.   County Defendants' Motion to Dismiss (Docket No. 54) is GRANTED as follows:

    a.   Plaintiff's claims against Defendants Hall and Knighton under state law (Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action) are DISMISSED without prejudice for lack of jurisdiction.

    b.   Plaintiff's claims for defamation and negligent infliction of emotional distress (Fifth and Sixth Causes of Action) against all County Defendants are also DISMISSED without prejudice for lack of jurisdiction.

    c.   Plaintiff's remaining claims against all County Defendants are DISMISSED with prejudice for failure to state a claim.

4.   Plaintiff's amended complaint (Docket No. 28) is DISMISSED.

5.   The Clerk of Court is directed to close the case.

SO ORDERED this 29th day of March, 2017.

BY THE COURT:

JILL N. PARRISH
United States District Judge